IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 21, 2024 Session

**ROBERT E. LEE FLADE v. CITY OF SHELBYVILLE, TENNESSEE ET AL.**

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Bedford County**
**No. 13837     M. Wyatt Burk, Judge**
_____

**No. M2022-00553-SC-R11-CV**
_____

In this appeal, we examine the intersection of the rule governing the voluntary dismissal of a civil action, Tenn. R. Civ. P. 41.01, and the statutory scheme of the Tennessee Public Participation Act ("TPPA"), Tenn. Code Ann. §§ 20-17-101 to -110 (2021). Robert E. Lee Flade filed suit against several defendants over what he considered to be disparaging remarks that were made on social media. Two of the defendants, Stephanie Isaacs and the Bedford County Listening Project ("the BCLP"), each filed not only a motion to dismiss the complaint pursuant to Rule 12.02(6) of the Tennessee Rules of Civil Procedure, but also a petition to dismiss pursuant to the TPPA. The TPPA petitions sought dismissal of the complaint with prejudice, an award of attorney's fees and costs, and an award of sanctions. Mr. Flade filed responses, and both the motions and the petitions were set for hearing. However, before the trial court conducted the hearing, Mr. Flade voluntarily nonsuited his complaint. As a result, the trial court entered an order of dismissal without prejudice. Ms. Isaacs and the BCLP sought to have the trial court adjudicate their TPPA petitions notwithstanding the dismissal of the complaint. The trial court determined that Mr. Flade's nonsuit concluded the matter and declined to adjudicate the TPPA petitions. On appeal as of right, the Court of Appeals affirmed. Flade v. City of Shelbyville, No. M2022-00553-COA-R3-CV, 2023 WL 2200729, at *1 (Tenn. Ct. App. Feb. 24, 2023), perm. app. granted, (Tenn. Aug. 9, 2023). We granted permission to appeal. Based on our review of applicable law, we conclude that although the right to take a voluntary nonsuit is subject to certain limitations, the mere filing of a TPPA petition is not among them. Thus, we hold that the trial court correctly declined to adjudicate the pending TPPA petitions after Mr. Flade voluntarily nonsuited his complaint. Accordingly, we affirm the judgment of the Court of Appeals.

**Tenn. R. App. P. 11 Appeal by Permission;**
**Judgment of the Court of Appeals Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which HOLLY KIRBY, C.J., and ROGER A. PAGE, SARAH K. CAMPBELL, and DWIGHT E. TARWATER, JJ., joined.

Daniel A. Horwitz, Lindsay Smith, and Melissa K. Dix, Nashville, Tennessee, for the appellant, Stephanie Isaacs.

Sarah L. Martin, Nashville, Tennessee, for the appellant, Bedford County Listening Project.

Jason R. Reeves, Shelbyville, Tennessee, for the appellee, Robert E. Lee Flade.

Paul R. McAdoo, Brentwood, Tennessee, for the Amici Curiae, The Associated Press, The Daily Memphian, The E.W. Scripps Co., Gannett Co., Gray Media Group, Inc., Institute for Public Service Reporting, The New York Times Co., Reporters Committee for Freedom of the Press, Tennessee Association of Broadcasters, and Tennessee Press Association.

William J. Harbison II, Nashville, Tennessee, for the Amicus Curiae, William J. Harbison II.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

This case arose when Robert E. Lee Flade ("the Plaintiff") filed a lawsuit in July 2021 concerning events that had occurred approximately six months earlier.[1] The Plaintiff purchased a duplex in Shelbyville, Tennessee, in December 2020. Because he intended to renovate the duplex and resell it, the Plaintiff advised the tenants "that they would be required to promptly move." In January 2021, the Plaintiff was contacted by Stephanie Isaacs, who claimed to be "with the Bedford County Listening Project and on the Shelbyville City Council." The BCLP was an organization that provided, among other things, resources to and advocacy on behalf of tenants in Bedford County, Tennessee. According to the Plaintiff, Ms. Isaacs told him that "he had tenants with a water leak and that he had to fix it for them." Given that he intended to renovate and resell the property, the Plaintiff did not view himself as a landlord. He also informed Ms. Isaacs of his "belief that there were no tenants occupying his duplex."

---

[1] Because this case never was adjudicated, our recitation of the facts comes principally from the allegations in the complaint, supplemented in part by the TPPA petitions, responses, and supporting affidavits.

Unbeknownst to the Plaintiff at the time, Ms. Isaacs and the BCLP took to social media to discuss the issue.[2] Ms. Isaacs and the BCLP identified the Plaintiff by name and provided his cell phone number. According to the complaint, Ms. Isaacs and the BCLP "falsely claimed that [the] Plaintiff was the reason for a child going with[out] heat and water." Additionally, the Plaintiff alleged that in the video on the BCLP's social media page, Ms. Isaacs claimed "that Plaintiff is a slum lord and that people like [the Plaintiff] are just messing with people's lives, among other numerous defamatory and libelous per se statements." Ms. Isaacs and the BCLP also urged viewers to contact the Plaintiff and request that he be a good neighbor and do what he was supposed to do, i.e., fix the water leak issue. The Plaintiff alleged that he "began receiving unknown calls and [texts] demanding he make repairs for his tenants, threatening him and calling him names," which the Plaintiff asserted "were threatening and demeaning in nature and caused [the] Plaintiff significant emotional distress."

Furthermore, according to the complaint, Ms. Isaacs, "while claiming she [was] acting as a city council member and part of [the] BCLP, continued to act against [the] Plaintiff by advising the holdover tenants . . . that they should not leave, that they should seek relief under the eviction moratorium granted due to COVID and otherwise assisted [them] in staying in [the] Plaintiff's duplex for months before he could obtain sufficient detainer warrants." Lastly, the Plaintiff alleged that Ms. Isaacs and the BCLP caused the tenants to contact the Shelbyville Codes Department. According to the Plaintiff, this action prompted the Codes Department to issue a "Notice of Repair demanding certain repairs be made within 30 days." The Plaintiff alleged that he was "forced to file an appeal and request a formal hearing," which "cost[] him additional funds out of pocket."

The complaint named five defendants, among them the City of Shelbyville ("the City"), Ms. Isaacs, and the BCLP.[3] The Plaintiff asserted claims for "libel per se, intentional interference with business, intentional infliction of emotional distress, stalking and harassment." The Plaintiff sought compensatory damages in the amount of $1 million and punitive damages in the amount of $1 million.

The City filed a motion to dismiss the complaint for failure to state a claim. See Tenn. R. Civ. P. 12.02(6). It asserted, first, that it was immune from liability for intentional tort claims by virtue of the Tennessee Governmental Tort Liability Act, see Tenn. Code Ann. §§ 29-20-101 to -408 (2012 & Supp. 2021), and, second, that the Plaintiff's claims for stalking and harassment did not constitute civil causes of action. Likewise, Ms. Isaacs

---

[2] The Plaintiff referred to a livestream video on social media as well as posts on "certain social media accounts."

[3] The remaining two defendants—alleged to be tenants in the property purchased by the Plaintiff— were not served with the complaint, did not participate in the proceedings below, and are not pertinent to this appeal. See Flade, 2023 WL 2200729, at *1 n.3.

and the BCLP each filed a motion to dismiss pursuant to Rule 12.02(6), in which they argued for various reasons that the Plaintiff's lawsuit failed to state a claim for relief.

More importantly for purposes of this appeal, however, Ms. Isaacs and the BCLP (collectively, "the Petitioners") each also filed a petition to dismiss the complaint pursuant to the TPPA.[4] The TPPA petitions asserted that the Plaintiff's lawsuit constituted a Strategic Lawsuit Against Public Participation ("a SLAPP suit")[5] that was subject to the procedures and consequences set forth in the TPPA. Through the petitions and supporting materials,[6] the Petitioners contended that they had established a prima facie case that the Plaintiff's lawsuit was based on, related to, or in response to their exercise of the right to free speech, right to petition, or right of association. See Tenn. Code Ann. § 20-17-105(a). The Petitioners argued that the Plaintiff could not establish a prima facie case for each essential element of the claims in his lawsuit for a variety of reasons. See Tenn. Code Ann. § 20-17-105(b). Thus, the TPPA petitions sought dismissal of the complaint with prejudice, an award of attorney's fees and costs, and discretionary sanctions to deter the future filing of what they characterized as a facially frivolous lawsuit. See Tenn. Code Ann. §§ 20-17-105(e), -107(a).

The Plaintiff filed responses to the TPPA petitions, along with an accompanying affidavit and an electronic copy of the livestream video featuring Ms. Isaacs and the BCLP. In his responses, the Plaintiff argued that he satisfied the burden of establishing a prima facie case for each essential element of the claims in his lawsuit. Thus, the Plaintiff sought denial of the TPPA petitions and an award of attorney's fees for defending against the petitions. See Tenn. Code Ann. § 20-17-107(b) (providing authority for the court to award attorney's fees and costs incurred in opposing a TPPA petition upon a specific written finding that the petition was frivolous or filed solely for the purpose of unnecessary delay).

Ms. Isaacs filed a reply to the Plaintiff's response. In her reply, Ms. Isaacs assailed the Plaintiff's effort to establish a prima facie case for each essential element of the claims in the lawsuit and argued that the Plaintiff had failed to carry his burden under the TPPA.

The hearing on the various motions to dismiss and the TPPA petitions was scheduled for February 24, 2022.[7] On February 18, 2022, the Plaintiff filed a "Notice of

---

[4] The TPPA petitions have slight differences, but for purposes of this appeal, we will refer to them jointly.

[5] We will describe a SLAPP suit later in this opinion when we examine the TPPA in more detail.

[6] Ms. Isaacs attached several exhibits to her filing, and the BCLP attached an affidavit from its lead organizer. See Tenn. Code Ann. § 20-17-105(d) (authorizing the consideration of affidavits and other admissible evidence in adjudicating a TPPA petition).

[7] The complaint was filed in July 2021, and the first motion to dismiss—the City's—was filed in August 2021. Intervening events, particularly a dispute about discovery propounded by the Plaintiff to the

Voluntary Dismissal" without prejudice pursuant to Rule 41.01(1) of the Rules of Civil Procedure.[8]  The trial court entered an order of dismissal, without prejudice, on that same day.  See Tenn. R. Civ. P. 41.01(3) (requiring that a voluntary nonsuit be followed by an order of voluntary dismissal signed by the court and entered by the clerk).

However, also on February 18, 2022, prior to the entry of the order of dismissal, Ms. Isaacs filed a "Notice of Intent to Proceed" with the hearing on her TPPA petition, notwithstanding the Plaintiff's notice of voluntary dismissal.  The BCLP followed suit with its own "Notice of Intent to Proceed" on February 22, 2022.  In their notices, the Petitioners argued that under Rule 41.01(1) and related caselaw, the trial court was required to adjudicate the TPPA petitions even though the Plaintiff had filed a notice of voluntary dismissal.[9]  They continued to seek dismissal with prejudice, an award of attorney's fees and costs, and sanctions pursuant to the TPPA.  The Plaintiff filed a response on February 23, 2022, and later filed a supplemental response, arguing that the mere filing of a TPPA petition did not curtail his right to take a voluntary nonsuit under Rule 41.01(1) and that the resulting dismissal concluded the case.

The matter was heard on February 24, 2022, the date originally scheduled for hearing the motions to dismiss and the TPPA petitions.  The trial court made clear that the hearing would address only whether the court should entertain the TPPA petitions notwithstanding the voluntary nonsuit.[10]  At the conclusion of the hearing, the trial court took the matter under advisement.  Ultimately, the trial court entered an order stating that the Plaintiff had "a 'free and unrestricted' right to dismiss this action without prejudice." The trial court found that the existence of the TPPA petitions pending at the time of the notice of voluntary dismissal did not qualify as an exception to that general principle.  Thus, the trial court determined that the Plaintiff's nonsuit concluded the matter, and it declined to adjudicate the TPPA petitions.

Ms. Isaacs and the BCLP appealed as of right.  See Tenn. Code Ann. § 20-17-106. The Court of Appeals affirmed the judgment of the trial court.  Flade, 2023 WL 2200729, at *1.  The intermediate appellate court observed that "[u]nder Rule 41.01(1), a plaintiff may take a voluntary non-suit . . . as a matter of right."  Id. at *9 (quoting Ewan v. Hardison

---

City before the TPPA petitions were filed, served to delay the hearing on the motions to dismiss and the TPPA petitions from an earlier date to February 24, 2022.

[8] It appears that the Plaintiff served counsel for the City, Ms. Issacs, and the BCLP via electronic mail on February 17, 2022.  The Notice of Voluntary Dismissal was not stamped filed by the trial court clerk until February 18.

[9] In contrast, given the voluntary dismissal of the complaint, none of the defendants asked the trial court to adjudicate the Rule 12.02(6) motions to dismiss.

[10] The trial court noted that if it determined that the Petitioners could proceed with the TPPA petitions, it would set a future date to hear substantive arguments on the petitions.

Law Firm, 465 S.W.3d 124, 130 (Tenn. Ct. App. 2014) (internal quotation marks omitted)). However, the court noted that Tennessee law has recognized limited exceptions to this general principle, and it addressed three potential exceptions in the context of this case.

First, the court recognized that Rule 41.01(1) expressly states that the right to take a voluntary nonsuit is "[s]ubject to the provisions of Rule 23.05, Rule 23.06, or Rule 66 *or [] any statute*." Id. at *11 (emphasis added) (quoting Tenn. R. Civ. P. 41.01(1)). As a result, the court addressed whether Rule 41.01(1) was "subject to" the provisions of the TPPA. Id. at *11–15. Second, the court recognized that "there is 'an implied exception' to Rule 41.01 'which prohibits nonsuit when it would deprive the defendant of some vested right.'" Id. at *16 (quoting Lacy v. Cox, 152 S.W.3d 480, 484 (Tenn. 2004)). As a result, the court addressed whether the Petitioners had a vested right that prohibited the Plaintiff's voluntary nonsuit. Id. at *16–18. Third, the court recognized that "[i]f a counterclaim has been pleaded by a defendant prior to the service upon the defendant of plaintiff's motion to dismiss, the defendant may elect to proceed on such counterclaim in the capacity of a plaintiff." Id. at *21 (quoting Tenn. R. Civ. P. 41.01(1)). As a result, the court addressed whether a TPPA petition qualifies as a counterclaim under Rule 41.01(1), such that the Petitioners could pursue the petitions notwithstanding the Plaintiff's voluntary nonsuit. Id. at *21–24.

In each instance, the intermediate appellate court determined that the filing of the TPPA petitions in this case did not limit the availability of a voluntary nonsuit under Rule 41.01(1).[11] Id. at *15, *18, *24. In the course of its analysis, the court considered the Petitioners' overarching assertion that the TPPA limits the availability of a voluntary nonsuit because "interpreting Rule 41 in a manner that enables defendants to vindicate their rights under the TPPA even after a plaintiff's voluntary dismissal is necessary to achieve the TPPA's legislative purposes." Id. at *10. Likewise, the court considered the Petitioners' references to authority from sister states, but it found the authority unpersuasive. Id. at *18–21. Accordingly, the intermediate appellate court concluded that the trial court did not err in declining to adjudicate the TPPA petitions after the Plaintiff voluntarily nonsuited pursuant to Rule 41.01(1). Id. at *1, *26. We granted permission to appeal.

## II. ANALYSIS

Before this Court, the Petitioners maintain that the trial court erred by declining to adjudicate their TPPA petitions notwithstanding that the Plaintiff filed a notice of voluntary

---

[11] In rejecting the notion that a TPPA petition qualifies as a counterclaim for purposes of Rule 41.01(1), the court acknowledged that another panel of the Court of Appeals suggested that a TPPA petition would qualify as such. Flade, 2023 WL 2200729, at *22 (citing Adamson v. Grove, No. M2020-01651-COA-R3-CV, 2022 WL 17334223, at *14 (Tenn. Ct. App. Nov. 30, 2022)). The court noted that the panel's conclusion in Adamson, while "thorough," was "largely *dicta*." Id. Ultimately, the intermediate appellate court in this case disagreed with the court in Adamson. Id. at *24.

dismissal before the petitions were submitted to the trial court for determination. They argue that Rule 41.01(1) does not preclude the adjudication of a TPPA petition that is pending at the time a notice of voluntary dismissal is filed. In particular, the Petitioners contend: (1) that the right to take a voluntary nonsuit under Rule 41.01(1) is "subject to" the provisions of the TPPA; (2) that the TPPA confers statutory rights that vest upon the filing of a TPPA petition and that thereafter cannot be nullified through a voluntary nonsuit; and (3) that the substantive rights conferred by the TPPA qualify as counterclaims for purposes of Rule 41.01(1). To support their arguments, the Petitioners assert that interpreting Rule 41.01(1) to allow for the adjudication of a pending TPPA petition after a voluntary nonsuit is necessary to achieve the TPPA's legislative purposes and is consistent with persuasive authority from other jurisdictions. We find the Petitioners' arguments unavailing, and we affirm the judgment of the Court of Appeals.

### A. Standard of Review

This appeal requires examination of the intersection between Rule 41.01 and the TPPA. Therefore, like the trial court and the Court of Appeals before us, we must interpret the rule and the statutory provisions. Such interpretation entails a question of law, which we review de novo upon the record with no presumption of correctness for the determination of the courts below. Falls v. Goins, 673 S.W.3d 173, 179 (Tenn. 2023); State v. Allison, 618 S.W.3d 24, 45 (Tenn. 2021); Fair v. Cochran, 418 S.W.3d 542, 544 (Tenn. 2013) (citing Lacy v. Cox, 152 S.W.3d 480, 483 (Tenn. 2004)).

### B. The Right to Take a Voluntary Nonsuit

As a general matter, a plaintiff has a "unilateral and absolute" right to take a voluntary nonsuit[12] to terminate an action without prejudice, subject only to limited exceptions. Lawrence A. Pivnick, Tennessee Circuit Court Practice § 23:1, at 1039 (2009). Although Tennessee law requires an order signed by the trial court and entered by the clerk, see Tenn. R. Civ. P. 41.01(3), a voluntary nonsuit under Rule 41.01(1) generally is not subject to court approval. 9 Tenn. Juris. Dismissal, Discontinuance & Nonsuit § 3, at 570 (2021). The right to take a voluntary nonsuit in Tennessee is longstanding, having been available in some form for more than two centuries. Evans v. Perkey, 647 S.W.2d 636, 640 (Tenn. Ct. App. 1982); see also Lacy, 152 S.W.3d at 487 n.16 (identifying statutory provisions that governed nonsuits dating back to 1801, up to the adoption of the Rules of Civil Procedure in 1970). In the present day, the availability of a voluntary nonsuit is governed first and foremost by our Rules of Civil Procedure. The Rules of Civil Procedure are promulgated by this Court, approved by the General Assembly, and have the force and effect of law. Hall v. Haynes, 319 S.W.3d 564, 571 (Tenn. 2010).

---

[12] Tennessee law refers to both "voluntary nonsuit" and "voluntary dismissal." In this opinion, we use the terms interchangeably, and we refer to a plaintiff's unilateral right to dismiss an action rather than a dismissal that reflects agreement of the parties or requires approval of the trial court.

With respect to a voluntary nonsuit, Rule 41.01 provides, in pertinent part:

> Subject to the provisions of Rule 23.05, Rule 23.06 or Rule 66 or any statute, and except when a motion for summary judgment made by an adverse party is pending, the plaintiff shall have the right to take a voluntary nonsuit to dismiss an action without prejudice by filing a written notice of dismissal at any time before the trial of a cause and serving a copy of the notice upon all parties . . .; or by an oral notice of dismissal made in open court during the trial of a cause; or in jury trials at any time before the jury retires to consider its verdict and prior to the ruling of the court sustaining a motion for a directed verdict.  If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of plaintiff's motion to dismiss, the defendant may elect to proceed on such counterclaim in the capacity of a plaintiff.

Tenn. R. Civ. P. 41.01(1).[13]  Generally speaking, "[w]hen a voluntary nonsuit is taken, the rights of the parties are not adjudicated, and the parties are placed in their original positions prior to the filing of the suit."  Himmelfarb v. Allain, 380 S.W.3d 35, 40 (Tenn. 2012).

We have observed that the rule governing voluntary nonsuits in Tennessee is more permissive than in the federal courts and some of our sister states.  Weedman v. Searcy, 781 S.W.2d 855, 856–57 (Tenn. 1989); see also Lacy, 152 S.W.3d at 484–85 (noting that the availability of a nonsuit as of right terminates at a considerably later procedural stage under our rule than under the federal rule).  Our rule recognizes that the plaintiff is in large measure the "master of his suit," Rickets v. Sexton, 533 S.W.2d 293, 294 (Tenn. 1976), and "in most situations[,] a voluntary non-suit may be taken as a matter of right," Clevenger v. Baptist Health Sys., 974 S.W.2d 699, 700 (Tenn. Ct. App. 1997).  Thus, as a general matter, Rule 41.01(1) "permits liberal use of voluntary nonsuits at any time prior to 'final submission' to the trial court for decision in a bench trial or in a jury trial before the jury retires to deliberate."  Himmelfarb, 380 S.W.3d at 40; see also Lacy, 152 S.W.3d at 484 (stating that the plaintiff has a "free and unrestricted right to voluntary dismissal without prejudice before the jury retires"); Weedman, 781 S.W.2d at 857 (stating that in a non-jury matter, the plaintiff has a right to a voluntary nonsuit "until the matter has been finally submitted to the court for determination on the merits"); see generally 4 Nancy Fraas

---

[13] There exists a slight discrepancy in the language of the first sentence of Rule 41.01(1) between the version in the Official Tennessee Code produced by LexisNexis and the version produced by Thomson Reuters (including that appearing in Westlaw).  The language quoted here and used throughout this opinion is from the Official Tennessee Code.  It begins, "Subject to the provisions of Rule 23.05, Rule 23.06 or Rule 66 or any statute . . . ."  The version produced by Thomson Reuters, with relevant emphasis added, begins, "Subject to the provisions of Rule 23.05, Rule 23.06, or Rule 66 or of any statute . . . ."  The cause of the discrepancy is unknown, but it does not affect our analysis.

MacLean, Tennessee Practice 752, cmt. 41:2 (5th ed. 2022) (explaining the procedure for voluntary nonsuit).

However, as Rule 41.01 itself makes clear, a plaintiff's liberal right to a voluntary nonsuit without prejudice is subject to certain limited exceptions. Among them, the rule expressly states that the right to take a voluntary nonsuit is "[s]ubject to the provisions of Rule 23.05, Rule 23.06 or Rule 66 *or any statute*." Tenn. R. Civ. P. 41.01(1) (emphasis added). In addition, a plaintiff's right to a voluntary nonsuit is subject to "an implied exception which prohibits nonsuit when it would deprive the defendant of some vested right." Lacy, 152 S.W.3d at 484 (citing Anderson v. Smith, 521 S.W.2d 787, 790 (Tenn. 1975) ("Though not stated in the rule, the right of plaintiff to a nonsuit is subject to the further restriction that the granting of the nonsuit will not deprive the defendant of some right that became vested during the pendency of the case.")). Furthermore, returning to the text of the rule, a defendant may elect to proceed on a counterclaim that was pleaded prior to service of a notice of voluntary dismissal notwithstanding the plaintiff's nonsuit. Tenn. R. Civ. P. 41.01(1). In this case, the Petitioners argue that their TPPA petitions qualify for adjudication by the trial court under all three categories, despite the Plaintiff's filing of a notice of voluntary dismissal.[14]

*C. The Tennessee Public Participation Act*

The TPPA is a relatively new legislative creation, and we only recently had our first occasion to examine the essential features of the statutory scheme:

> The Tennessee Public Participation Act ("TPPA") was enacted in 2019 and is Tennessee's version of an anti-SLAPP statute. Tennessee Public Participation Act, ch. 185, §§ 1–2, 2019 Tenn. Pub. Acts 455–57 (codified at Tenn. Code Ann. §§ 20-17-101 to -110 (2021)). The acronym "SLAPP" stands for strategic lawsuits against public participation. The primary aim of a SLAPP is not to prevail on the merits, but rather to chill the speech of the defendant by subjecting him or her to costly and otherwise burdensome litigation. See 2 Rodney A. Smolla, Law of Defamation § 9:107 (2d ed.), Westlaw (database updated May 2024); Nandigam Neurology, PLC v. Beavers, 639 S.W.3d 651, 658 (Tenn. Ct. App. 2021). Because SLAPPs threaten to interfere with the exercise of constitutionally protected rights, more than twenty states have adopted anti-SLAPP statutes to protect

---

[14] Of course, there are other limitations on the right to a voluntary dismissal without prejudice that are not at issue in this case. For example, a pending motion for summary judgment by an adverse party limits the availability of a voluntary nonsuit, see Tenn. R. Civ. P. 41.01(1), and a dismissal without prejudice is unavailable "when filed by a plaintiff who has twice dismissed in any court an action based on or including the same claim," Tenn. R. Civ. P. 41.01(2). In this appeal, we address only the three exceptions advanced by the Petitioners, and we do not purport to articulate here all existing limitations on the availability of a voluntary nonsuit.

defendants "from the often punishing process of defending" such suits. Smolla, supra, § 9:107.

The TPPA attempts to strike a balance between two competing interests. On the one hand, it seeks to "encourage and safeguard the constitutional rights of persons to petition, to speak freely, to associate freely, and to participate in government to the fullest extent permitted by law." Tenn. Code Ann. § 20-17-102. "[A]t the same time," it also seeks to "protect the rights of persons to file meritorious lawsuits for demonstrable injury." Id.

Like many other anti-SLAPP statutes, the TPPA establishes a procedure for swift dismissal of non-meritorious claims. The defendant in a SLAPP suit may file a petition to dismiss the action within sixty days of service of the action or "at any later time that the court deems proper." Id. § 20-17-104(a)–(b).

Courts engage in a two-step analysis to rule on a TPPA petition. First, the court determines whether the petitioner has made a prima facie case that the challenged lawsuit "is based on, relates to, or is in response to [the petitioner's] exercise of the right to free speech, right to petition, or right of association." Id. § 20-17-105(a). If the petitioner has not made this showing, the court denies the petition. See id. § 20-17-105(b). But if the petitioner succeeds at the first step, the court next determines whether the respondent has made a prima facie case for each essential element of his claim. Id. If the respondent meets this burden, the court must deny the petition unless "the petitioning party establishes a valid defense to the claims in the legal action." Id. § 20-17-105(b)–(c). Otherwise, the court must grant the petition and dismiss the suit with prejudice. Id. § 20-17-105(e).

The filing of a TPPA petition immediately stays discovery in the pending lawsuit until the court has ruled on the petition. Id. § 20-17-104(d). But "[t]he court may allow specified and limited discovery relevant to the petition upon a showing of good cause." Id. In ruling on a petition, a court may consider "supporting and opposing sworn affidavits stating admissible evidence" and "admissible evidence presented by the parties." Id. § 20-17-105(d). A court's ruling on a TPPA petition is immediately appealable. Id. § 20-17-106.

The TPPA also has a fee shifting provision. If a court grants a TPPA petition for dismissal, it "shall award" the petitioner "[c]ourt costs, reasonable attorney's fees, discretionary costs, and other expenses incurred in filing and prevailing upon the petition" along with "[a]ny additional relief,

- 10 -

including sanctions, that the court determines necessary to deter repetition of the conduct by the party who brought the legal action or by others similarly situated." Id. § 20-17-107(a)(1)–(2). Conversely, if a court finds that a petition was frivolous or solely dilatory, the court may award to the respondent costs and fees incurred to oppose the petition. Id. § 20-17-107(b).

Charles v. McQueen, 693 S.W.3d 262, 267–68 (Tenn. 2024).

As the Petitioners point out, the General Assembly saw fit to state the purpose of the TPPA in the statutory text and to provide that the legislation "shall be construed broadly to effectuate its purposes and intent." Tenn. Code Ann. § 20-17-102. Furthermore, the TPPA states that it "is intended to provide an additional substantive remedy to protect the constitutional rights of parties and to supplement any remedies which are otherwise available to those parties under common law, statutory law, or constitutional law or under the Tennessee Rules of Civil Procedure." Tenn. Code Ann. § 20-17-109.

### D. The "Subject to the Provisions of any Statute" Exception

In this case, although a hearing on the TPPA petitions had been scheduled, the Plaintiff sent written notice voluntarily dismissing the complaint before the matter was heard by and submitted to the trial court. As a general matter, the Plaintiff enjoyed the right to take a voluntary nonsuit without prejudice. See Tenn. R. Civ. P. 41.01(1); Himmelfarb, 380 S.W.3d at 40. However, as previously noted, Rule 41.01(1) provides that the right to take a voluntary nonsuit to dismiss an action without prejudice is "[s]ubject to the provisions of Rule 23.05, Rule 23.06 or Rule 66 *or any statute*." Tenn. R. Civ. P. 41.01(1) (emphasis added). The trial court and the Court of Appeals concluded that the provisions of the TPPA evidenced no exception to the availability of a voluntary nonsuit under Rule 41.01(1). Flade, 2023 WL 2200729, at *5, *11–15. The Petitioners argue that the courts below erred and maintain that the TPPA is and was designed to be a statutory exception under Rule 41.01(1).

Clearly, Rule 41.01(1) does not specifically identify the TPPA as an exception to the right to take a voluntary nonsuit. Nor does the TPPA refer to Rule 41.01, mention voluntary dismissal, or speak directly to the availability of a voluntary nonsuit after the filing of a TPPA petition. Thus, to determine whether the TPPA evidences an exception to the availability of a voluntary nonsuit, we must examine in detail the language of both Rule 41.01(1) and the TPPA. The rules of statutory construction guide our interpretation of both Rule 41.01 and the TPPA. See Thomas v. Oldfield, 279 S.W.3d 259, 261 (Tenn. 2009); State v. Crowe, 168 S.W.3d 731, 744 (Tenn. 2005). At the most fundamental level, "we seek to 'ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope.'" Falls, 673 S.W.3d at 180 (quoting State v. Welch, 595 S.W.3d 615, 621 (Tenn. 2020)); see also Thomas, 279 S.W.3d

- 11 -

at 261 (identifying an analogous goal with respect to interpretation of a court rule); <u>Crowe</u>, 168 S.W.3d at 744 (same).

To achieve that goal, we look first and foremost to the text of the statute because the statutory language is of primary importance. <u>State v. Dycus</u>, 456 S.W.3d 918, 924 (Tenn. 2015) (citing <u>State v. Jennings</u>, 130 S.W.3d 43, 46 (Tenn. 2004)); <u>Mills v. Fulmarque, Inc.</u>, 360 S.W.3d 362, 368 (Tenn. 2012). We give the statute's words "their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." <u>Coffee Cnty. Bd. of Educ. v. City of Tullahoma</u>, 574 S.W.3d 832, 839 (Tenn. 2019) (quoting <u>Mills</u>, 360 S.W.3d at 368); <u>see also</u> <u>Lee Med., Inc. v. Beecher</u>, 312 S.W.3d 515, 526 (Tenn. 2010). When those words are clear and unambiguous, we derive the legislative intent from the plain meaning of the statutory language and simply enforce the statute as written. <u>State v. Deberry</u>, 651 S.W.3d 918, 925 (Tenn. 2022); <u>In re Bentley D.</u>, 537 S.W.3d 907, 911 (Tenn. 2017) (citing <u>Lind v. Beaman Dodge, Inc.</u>, 356 S.W.3d 889, 895 (Tenn. 2011)). If, however, statutory language is ambiguous, we may consider other sources to discern the legislative intent. <u>In re Bentley D.</u>, 537 S.W.3d at 912 (quoting <u>Arden v. Kozawa</u>, 466 S.W.3d 758, 764 (Tenn. 2015)); <u>see also</u> <u>Lee Med., Inc.</u>, 312 S.W.3d at 527–28. "We endeavor to construe statutes in a reasonable manner which avoids statutory conflict and provides for harmonious operation of the laws." <u>Wallace v. Metro. Gov't of Nashville & Davidson Cnty.</u>, 546 S.W.3d 47, 52–53 (Tenn. 2018) (quoting <u>Ray v. Madison Cnty.</u>, 536 S.W.3d 824, 831 (Tenn. 2017)).

Rule 41.01(1) provides that the right to take a voluntary nonsuit is subject to the provisions of "any statute," and the TPPA certainly is a statute. However, that does not go very far in answering the question before this Court. Instead, it merely begs the question of exactly what kind of statute is contemplated by Rule 41.01(1). In examining the language of the rule, we observe that the "any statute" exception does not appear in a vacuum. Rather, the "any statute" exception appears at the end of a list that includes references to Rule 23.05, Rule 23.06, and Rule 66. Tenn. R. Civ. P. 41.01(1). Faced with this circumstance, we are mindful of the canon of statutory construction known as "noscitur a sociis," the Associated-Words Canon.[15]

---

[15] In addressing the question presented here, our Court of Appeals has referenced the canon of statutory construction known as "ejusdem generis." <u>Flade</u>, 2023 WL 2200729, at *13–15; <u>see also</u> <u>Solomon v. Solomon</u>, No. M2021-00958-COA-R3-CV, 2023 WL 3730597, at *2 (Tenn. Ct. App. May 31, 2023); <u>Adamson v. Grove</u>, No. M2020-01651-COA-R3-CV, 2022 WL 17334223, at *18 (Tenn. Ct. App. Nov. 30, 2022). Ejusdem generis, meaning "of the same kind or class," is a canon of statutory construction that we have recognized as "dictat[ing] that 'when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed.'" <u>State v. Marshall</u>, 319 S.W.3d 558, 561 (Tenn. 2010) (first quoting <u>Ejusdem generis</u>, <u>Black's Law Dictionary</u> (9th ed. 2009); and then citing <u>Sallee v. Barrett</u>, 171 S.W.3d 822, 829 (Tenn. 2005)). Ejusdem generis is a variation of noscitur a sociis. Antonin Scalia & Bryan A. Garner, <u>Reading Law: The Interpretation of Legal Texts</u> 205 (2012); 2A Norman J. Singer & Shambie Singer, <u>Sutherland Statutes and Statutory Construction</u> § 47:17, at 364 (7th ed. 2014). Ejusdem generis differs in that, strictly speaking, it applies to scenarios in which "[i]f the general words are given their full and natural abstract meaning, they would include the objects

Noscitur a sociis is a Latin phrase that means "it is known by its associates." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 195 (2012). The Associated-Words Canon holds that "the meaning of an unclear word or phrase, especially one in a list, should be determined by the words immediately surrounding it." Id. at 434–35; see also 2A Norman J. Singer & Shambie Singer, Sutherland Statutes and Statutory Construction § 47:16, at 357–58 (7th ed. 2014) (stating that "ordinarily, the coupling of words denotes an intention that they should be understood in the same general sense"). Stated another way, noscitur a sociis instructs that "words grouped in a list should be given related meanings." Scalia & Garner, supra, at 195.

The canon is derived from the fundamental principle that "[c]ontext is a primary determinant of meaning," id. at 167, and it applies when words have been "conjoined in such a way as to indicate that they have some quality in common," id. at 196. Tennessee courts have recognized the concept time and again. See, e.g., Wallace, 546 S.W.3d at 52 (quoting Lee Med., Inc., 312 S.W.3d at 526) (stating that "words are known by the company they keep"); Hammer v. Franklin Interurban Co., 354 S.W.2d 241, 242 (Tenn. 1962) (stating that courts should determine the meaning of a word in a statute by considering it "in connection with . . . other words used with it"); Nashville, Chattanooga & St. Louis Ry. Co. v. Carroll Cnty., 12 Tenn. App. 380, 387 (Tenn. Ct. App. 1930) ("Again, it is a familiar maxim that words[,] like men[,] *noscitur a sociis*. They are judged by the company they keep.").

As relevant to the question before us, noscitur a sociis "limit[s] a general term to a subset of all the things . . . it covers." Scalia & Garner, supra, at 196. Thus, applying the canon, we conclude that the relevant language of Rule 41.01(1) indicates that the statutes contemplated by the rule must have some quality in common with Rules 23.05, 23.06, and 66, such that they all can be understood in the same general sense.

Rule 23.05, Rule 23.06, and Rule 66 address disparate areas of the law. Rule 23.05 addresses the dismissal or compromise of a class action. Rule 23.06 addresses a derivative action brought by one or more shareholders or members to enforce a right of a corporation or an unincorporated association. Rule 66 addresses an action in which a receiver was appointed. However, they share an obvious common feature, particularly when considering the relevant context, that is, their placement in the rule addressing voluntary dismissal. Each of the listed rules expressly limits the general principle allowing a plaintiff to voluntarily nonsuit an action unilaterally. More specifically, Rule 23.05 states, in pertinent part: "A certified class action shall not be voluntarily dismissed or compromised

designated by the specific words, making the latter superfluous." Singer & Singer, supra, § 47:17, at 382–83. Rule 41.01(1)'s use of the general "any statute" language in no way renders the listed specific rule references superfluous. Thus, we believe the more appropriate canon to aid our interpretation of "any statute" is noscitur a sociis. However, the two canons are essentially two sides of the same coin, and they "produce identical results in most situations." Id. § 47:16, at 363–64.

without approval of the court."  Similarly, Rule 23.06 states, in pertinent part: "The [derivative] action shall not be voluntarily dismissed or compromised without the approval of the court."  Likewise, Rule 66 provides, in pertinent part: "An action wherein a receiver has been appointed shall not be dismissed except by order of the court."

In this case, the Court of Appeals concluded that the TPPA is not the type of statute contemplated by the "subject to any statute" exception because the TPPA "does not specifically or implicitly alter the right to a nonsuit provided by Rule 41.01."  Flade, 2023 WL 2200729, at *15.  Other panels of the Court of Appeals have been more circumspect, construing the "subject to any statute" exception as referring "only to those statutes that specifically limit a party's right to obtain a voluntary nonsuit or otherwise relate specifically to the effect of a voluntary nonsuit."  Solomon v. Solomon, No. M2021-00958-COA-R3-CV, 2023 WL 3730597, at *2 (Tenn. Ct. App. May 31, 2023) (internal quotation marks omitted); see also Adamson v. Grove, No. M2020-01651-COA-R3-CV, 2022 WL 17334223, at *18 (Tenn. Ct. App. Nov. 30, 2022).

Indeed, there are statutes that—like Rules 23.05, 23.06, and 66—specifically limit the availability of a voluntary nonsuit.  For example, Tennessee law allows citizen relators to bring an action to abate certain nuisances.  See Tenn. Code Ann. § 29-3-102 (2024).  With respect to such actions, Tennessee law specifies:

(a)   No such proceeding shall be voluntarily dismissed except upon a written, sworn statement of the relator or relators of the reasons for dismissal.

(b)   If such reasons are not satisfactory to the court, or the court shall be of opinion that the proceeding ought not to be dismissed, it may order the same to proceed, and may substitute another relator or relators willing to act as such, either with or without bond, in the court's discretion.

Tenn. Code Ann. § 29-3-107 (2024).  This statutory language specifically limits the availability of a voluntary dismissal.

Likewise, under Tennessee's False Claims Act, Tenn. Code Ann. §§ 4-18-101 to -108 (2021), a qui tam plaintiff may bring a civil action alleging liability for, among other things, the knowing presentation of a false claim for payment to an officer or employee of the State.  Tenn. Code Ann. §§ 4-18-103(a)(1), -104(c)(1).  In that circumstance, the False Claims Act states: "Once filed, the action may be dismissed only with the written consent of the court, taking into account the best interests of the parties involved and the public purposes behind this chapter."  Tenn. Code Ann. § 4-18-104(c)(1).  This language specifically limits the right to take a voluntary nonsuit.  See also Tenn. Code Ann. § 71-5-183(b)(1) (2019) (similarly providing that a qui tam action under the Tennessee Medicaid False Claims Act "may be dismissed only if the court and the attorney general and reporter

- 14 -

or district attorney general give written consent to the dismissal and their reasons for consenting").

The Petitioners take issue with interpreting the "subject to any statute" exception to refer only to those statutes that "specifically" limit the right to obtain a voluntary nonsuit.[16] They suggest that if that was the intended meaning, Rule 41.01(1) would say "[s]ubject to . . . any statute that specifically limits a party's right to obtain a voluntary nonsuit."

Certainly, statutory language mirroring that of the rules listed in Rule 41.01(1)— i.e., language specifically referencing voluntary dismissal—likely would qualify as an exception to the availability of a voluntary nonsuit. However, to resolve this case, we need not decide whether specific language is required to qualify as a statutory exception under Rule 41.01(1).[17] Instead, applying noscitur a sociis, we hold that the statutes referenced as exceptions in Rule 41.01(1), at a minimum, need not contain certain magic language, but rather they must contain plain statutory text that clearly limits or otherwise addresses the right to take a voluntary nonsuit.

Having interpreted the language of Rule 41.01(1), we turn to the question of whether the TPPA evidences a statutory exception under the rule. As we previously mentioned, the TPPA does not refer specifically to Rule 41.01 or the voluntary dismissal of legal actions that are subject to the TPPA.[18] Moreover, the TPPA contains no language stating that the trial court shall adjudicate a petition notwithstanding any other provision of law or shall adjudicate a petition under all circumstances, nor any other language to that effect.

Perhaps because of these circumstances, the Petitioners' argument that the TPPA evidences an exception under Rule 41.01(1) stems from the purposes and intent of the TPPA, which are codified and part of the statutory text. See Tenn. Code Ann. §§ 20-17-102, -109. The Petitioners point out that the TPPA provides that it "is intended to provide an additional substantive remedy . . . and to supplement any remedies which are otherwise available . . . under the Tennessee Rules of Civil Procedure." Tenn. Code Ann. § 20-17-109. Furthermore, they note that the TPPA "shall be construed broadly to effectuate its

---

[16] In this vein, the Petitioners rely, in part, on caselaw involving sanctions under Rule 11 of the Tennessee Rules of Civil Procedure, see Justice v. Nelson, No. E2022-01540-COA-R3-CV, 2023 WL 6532955, at *8 (Tenn. Ct. App. Oct. 6, 2023), and suggest that Rule 11 sanctions may be adjudicated after a nonsuit even though the rule does not specifically limit the availability of a voluntary dismissal. As we explain below, our resolution of this issue does not turn on whether relevant statutory language must contain a specific reference to the availability of voluntary dismissal. Regardless, however, we find the comparison to caselaw involving Rule 11 sanctions inapposite.

[17] We leave the resolution of that question to another day.

[18] The dismissal referenced in the operative provisions of the TPPA entails court determinations. See Tenn. Code Ann. § 20-17-105(b)–(f) (specifying the applicable procedure and referring to the dismissal as "its [the court's] decision").

- 15 -

purposes[19] and intent." Tenn. Code Ann. § 20-17-102. Putting those provisions together, the Petitioners contend that the TPPA qualifies as a statutory exception under Rule 41.01(1).

We find this argument unpersuasive. We are mindful that the TPPA "is intended to provide an additional substantive remedy" and to supplement any remedies that are otherwise available under the Rules of Civil Procedure.[20] Tenn. Code Ann. § 20-17-109. However, the right to take a voluntary nonsuit was black letter law at the time the General Assembly enacted the TPPA. Even construing the TPPA broadly, the legislative intent to supplement remedies available under the Rules of Civil Procedure does not go so far as to evidence an intent to displace or restrict a longstanding right under the Rules of Civil Procedure. Indeed, the TPPA still serves as an additional substantive remedy that supplements remedies otherwise available under the Rules of Civil Procedure—in that it provides its own unique procedures, burdens, and consequences—even if a voluntary nonsuit is available. In other words, we do not glean from these general statutory provisions a legislative intent to preclude a voluntary nonsuit after the mere filing of a TPPA petition.

The Petitioners paint a grave picture, contending that the availability of a voluntary nonsuit after the filing of a TPPA petition would "nullify" or "eviscerate" the purposes of the TPPA. They assert that "the TPPA's deterrent and protective purposes are incompatible with a consequence-evading escape valve being available to plaintiffs as a matter of right." They further assert that the TPPA "cannot function" if a plaintiff's voluntary nonsuit precludes adjudication of a pending TPPA petition.

We decline to agree with such dire purported consequences. We do not believe that the TPPA would be nullified or would cease to function if the filing of a TPPA petition did not serve as an exception to the availability of a voluntary dismissal without prejudice under Rule 41.01(1). Regardless of the availability of a voluntary nonsuit, the filing of a TPPA petition triggers certain burdens and consequences. For example, discovery is stayed upon the filing of a TPPA petition, subject only to the trial court's discretion to allow "specified and limited discovery relevant to the petition upon a showing of good cause." Tenn. Code Ann. § 20-17-104(d). Discovery remains stayed until disposition of the TPPA petition. Id. This consequence of filing a TPPA petition serves to minimize the cost burden associated with defending frivolous lawsuits, which was a central legislative concern voiced during consideration of the TPPA. See Deb. on S.B. 1097, 111th Gen.

---

[19] Again, the purpose of the TPPA is two-fold: "to encourage and safeguard the constitutional rights of persons to petition, to speak freely, to associate freely, and to participate in government to the fullest extent permitted by law and, at the same time, protect the rights of persons to file meritorious lawsuits for demonstrable injury." Tenn. Code Ann. § 20-17-102.

[20] Indeed, in this case, Ms. Isaacs and the BCLP took advantage of both, in that each filed a TPPA petition in addition to a Rule 12.02(6) motion to dismiss.

Assemb., Reg. Sess. 1 (Tenn. Mar. 18, 2019) (statement of Sen. Steve Dickerson) (explaining that the TPPA would allow for a determination on the validity of a legal action before the expensive discovery portion of the lawsuit); Hearing on H.B. 777, 111th Gen. Assemb., Reg. Sess. 1 (Tenn. Mar. 27, 2019) (statement of Rep. Bob Ramsey) (same). The TPPA functions in this way regardless of the availability of a voluntary nonsuit. In other words, the TPPA still can minimize costs associated with frivolous lawsuits even if a nonsuit ultimately avoided the fee-shifting consequences associated with the favorable disposition of a TPPA petition. See Tenn. Code Ann. § 20-17-107(a) (stating that the court shall award costs, expenses, and attorney's fees, and potentially sanctions, only if the action is dismissed "pursuant to a petition filed under this chapter").

Relatedly, the existence of unique burdens on a responding party, see Tenn. Code Ann. §§ 20-17-104(c), -105(b) (requiring the responding party to establish a prima facie case for each essential element of the claim, including through submitting affidavits and/or other admissible evidence), and fee-shifting consequences, see Tenn. Code Ann. § 20-17-107(a), likely provide an incentive for a voluntary dismissal in the wake of the mere filing of a TPPA petition that other avenues—such as the filing of a Rule 12.02(6) motion to dismiss—do not provide. In this way, the TPPA still would function to minimize costs associated with frivolous lawsuits by prompting early dismissal before discovery costs mount.[21] We acknowledge that a voluntary dismissal under Rule 41.01 would avoid certain consequences associated with a successful TPPA petition, such as dismissal with prejudice and an award of costs and attorney's fees. However, we cannot agree with the Petitioners that failing to adjudicate a pending TPPA petition after a voluntary nonsuit would nullify or eviscerate the purposes of the TPPA.

Having addressed the language in the TPPA that the Petitioners point to in support of their argument, we note that they also make an alternative point that focuses on the absence of language in the TPPA. In this vein, they draw attention to the mandatory nature of the TPPA's dismissal language—that the trial court "shall dismiss the legal action" with prejudice if the petitioning party meets its burden and the responding party fails to meet its burden—and make the point that the TPPA sets forth no "voluntary nonsuit exception" to those provisions. See Tenn. Code Ann. § 20-17-105(b)–(c); see also Tenn. Code Ann. § 20-17-107(a) (providing that if the trial court dismisses a legal action pursuant to a TPPA petition, the court "shall award" attorney's fees and costs). In other words, the TPPA lacks any language excepting from its mandatory dismissal with prejudice (and award of attorney's fees and costs) the scenario of a plaintiff voluntarily nonsuiting the legal action

---

[21] The Petitioners acknowledge as much in their brief before this Court: "Without the threat of the TPPA's statutorily-mandated consequences, the Plaintiff would never have abandoned this lawsuit when he did; only the imminent threat of mandatory consequences caused him to do so."

that is the subject of a TPPA petition.[22]  They assert that they should prevail because this Court should not construe the TPPA to include a "voluntary nonsuit exception" to its mandatory consequences where one does not exist in the text of the statute.

Respectfully, this approach presents a backwards analysis.  The present case arose from the filing of a lawsuit by the Plaintiff.  As we have discussed, Tennessee law is clear that a plaintiff, having initiated a lawsuit, generally has a unilateral right to a voluntary nonsuit, subject to certain limited exceptions.  See Tenn. R. Civ. P. 41.01; Lacy, 152 S.W.3d at 484 (noting that absent certain limitations, Rule 41.01 provides a "free and unrestricted right to voluntary dismissal without prejudice").  This was the law in Tennessee long before the TPPA was enacted, and we presume that the General Assembly is aware of the state of the law at the time it enacts legislation.  See New v. Dumitrache, 604 S.W.3d 1, 14 (Tenn. 2020) (citing Brundage v. Cumberland Cnty., 357 S.W.3d 361, 365 (Tenn. 2011)).  Therefore, we start from the presumption that the TPPA does not interfere with a plaintiff's right to take a voluntary nonsuit.  The Plaintiff here sought to exercise that longstanding right.

The question here does not transform based on the TPPA's lack of a "voluntary nonsuit exception" in its procedure.  The proper question remains whether the plain language of the TPPA—which does not refer specifically to voluntary dismissal or Rule 41.01—clearly limits or otherwise addresses the right to take a voluntary nonsuit after the filing of a TPPA petition.  We decline to infer such an intent from the absence of language in the TPPA explicitly creating a "voluntary nonsuit exception" from the mandatory consequences "[i]f the court dismisses a legal action pursuant to a petition filed under [the TPPA]."[23]  Tenn. Code Ann. § 20-17-107(a).

The Petitioners further assert that the availability of a voluntary dismissal without prejudice that precludes the adjudication of a pending TPPA petition undercuts the deterrent purpose of the TPPA.  In addition, the Petitioners and the Amicus Curiae, Mr. Harbison, contend that the availability of a voluntary nonsuit that avoids the fee-shifting aspect of the TPPA undercuts contingency representation for defendants who are sued for exercising their constitutional rights.  We do not intend to minimize their concerns.  However, their policy-based arguments are best addressed to the legislative branch.

For the foregoing reasons, we conclude that the text of the TPPA does not clearly limit or otherwise address the right to take a voluntary nonsuit after the filing of a TPPA

---

[22] Again, the plain language of the TPPA does not speak to any mandatory consequences simply upon dismissal of the subject legal action, but instead only "[i]f the court dismisses a legal action pursuant to a petition filed under [the TPPA.]"  Tenn. Code Ann. § 20-17-107(a) (emphasis added).

[23] If anything, the absence of language in the TPPA's procedure addressing the subject of a voluntary dismissal only reinforces the conclusion that the text of the TPPA does not reflect a legislative intent to limit the availability of a voluntary nonsuit under Rule 41.01(1).

petition. Accordingly, the right to a voluntary dismissal pursuant to Rule 41.01 is not currently "subject to" the provisions of the TPPA.

*E. The Vested Rights Implied Exception*

We have recognized that there is an implied exception to the availability of a voluntary dismissal under Rule 41.01(1): "Though not stated in the rule, the right of plaintiff to a nonsuit is subject to the further restriction that the granting of the nonsuit will not deprive the defendant of some right that became vested during the pendency of the case." Anderson v. Smith, 521 S.W.2d 787, 790 (Tenn. 1975); see also Lacy, 152 S.W.3d at 484 (stating that the right to a voluntary dismissal without prejudice is subject to "an implied exception which prohibits nonsuit when it would deprive the defendant of some vested right"). Like the trial court, the Court of Appeals concluded that "the TPPA does not fall within the ambit of the 'vested rights' exception to Rule 41.01." Flade, 2023 WL 2200729, at *18. Before this Court, the Petitioners maintain that the TPPA "confers statutory rights that vest once a defendant has filed a TPPA petition, and a suing plaintiff cannot nullify those rights by nonsuiting."

At the outset, we must frame the question properly. In identifying their alleged vested rights, the Petitioners often refer to rights to the TPPA's "substantive remedies." More specifically, the Petitioners typically identify their vested rights as: (1) a vested right to obtain a dismissal with prejudice; (2) a vested right to recover their court costs, reasonable attorney's fees, discretionary costs, and other expenses; and (3) a vested right to obtain any additional relief, including sanctions, that the court determines necessary to deter repetition of the conduct by the party that brought the legal action or by others similarly situated. See Tenn. Code Ann. §§ 20-17-105(e), -107(a)(1)–(2). However, in our view, this construction mis-frames the issue.

A TPPA petitioner has no right to a dismissal with prejudice, an award of costs and attorney's fees, or an award of sanctions simply by virtue of filing a petition. The TPPA itself makes that point abundantly clear through its own plain language, which specifies that those consequences result only "[i]f the court dismisses a legal action pursuant to a petition filed under this chapter." Tenn. Code Ann. §§ 20-17-105(e), -107(a) (emphasis added). Of course, in this case, the trial court did not dismiss the Plaintiff's legal action pursuant to the TPPA petitions, but rather pursuant to the Plaintiff's notice of voluntary dismissal under Rule 41.01(1).

Instead, as the Petitioners at times suggest in their brief, the proper question is whether the Petitioners had a vested right to the adjudication of their pending TPPA petitions at the time the Plaintiff voluntarily nonsuited. In this regard, we note that the Petitioners make much of the Plaintiff's response to Ms. Isaacs' TPPA petition, in which the Plaintiff did not dispute that Ms. Isaacs' conduct entailed speech involving matters of public concern. Given the Plaintiff's response, the Petitioners assert that they had

established that the legal action was based on, related to, or in response to their exercise of the right to free speech before the Plaintiff's notice of voluntary dismissal. In other words, the Petitioners contend that they already had carried their initial burden at the time of the Plaintiff's voluntary nonsuit, and this circumstance presumably favors a vested right to adjudication of the petitions more than the filing of a TPPA petition alone.

We are not persuaded. At the time of the voluntary nonsuit, the matter was scheduled for a hearing, but it had not been argued and submitted to the trial court for determination. Exactly what would have been argued and what would have occurred at the hearing is uncertain. More importantly, regardless of the Plaintiff's written response to Ms. Isaacs' TPPA petition, it remained the duty of the trial court to evaluate the complaint, petitions, responses, affidavits and other supporting materials, and argument of counsel, and then determine whether the parties satisfied the various burdens associated with a TPPA petition. Cf. Clardy v. State, 691 S.W.3d 390, 409–10 (Tenn. 2024) (recognizing that the trial court was not bound by the position of the parties on due process tolling for an error coram nobis petition and, therefore, properly set a hearing to determine the matter). The relevant procedural posture was simply that the Petitioners' TPPA petitions had been filed but were awaiting argument and submission to the trial court for determination.[24] Thus, the relevant question remains whether, at the time of the Plaintiff's voluntary nonsuit, the Petitioners had a vested right to the adjudication of their pending TPPA petitions.

The concept of a vested right is "difficult to define with precision." Doe v. Sundquist, 2 S.W.3d 919, 923 (Tenn. 1999). We have stated generally that a vested right is "one 'which it is proper for the state to recognize and protect and of which [an] individual could not be deprived arbitrarily without injustice.'" Id. (quoting Morris v. Gross, 572 S.W.2d 902, 905 (Tenn. 1978)) (alteration in original). We also have characterized a vested right as including "legal or equitable title to enforcement of a demand." Morris, 572 S.W.2d at 905 (quoting 16 Am. Jur. 2d Constitutional Law § 421 (1964)). Elsewhere it has been defined as a "fixed right to present or future enjoyment . . . that does not depend on an event that is uncertain" or a "right complete and consummated, and of such character that it cannot be divested without the consent of the person to whom it belongs, and fixed or established, and no longer open to controversy." Vested Rights, Black's Law Dictionary (6th ed. 1990).

Courts encounter the concept perhaps most quintessentially in the context of evaluating the impact of legislative changes. See, e.g., Doe, 2 S.W.3d at 923–25 (concluding that a change in adoption law did not impair any vested rights of birth parents);

---

[24] Relatedly, the Petitioners sometimes state that their rights vested, at minimum, upon the filing of a TPPA petition that satisfied the statute's burden of making a prima facie case that a legal action against the petitioning party was based on, related to, or in response to that party's exercise of the right to free speech, right to petition, or right of association. See Tenn. Code Ann. § 20-17-105(a). However, whether their petitions satisfied the TPPA's initial burden under section 20-17-105(a) was never determined. As a result, the Petitioners' TPPA petitions cannot be characterized as anything more than filed TPPA petitions.

Morris, 572 S.W.2d at 905–08 (finding invalid a change in the law governing the procedure for bringing medical malpractice claims because it interfered with the vested rights of a plaintiff who had followed prior procedure); State ex rel. SCA Chem. Waste Servs. v. Konigsberg, 636 S.W.2d 430, 437 (Tenn. 1982) (concluding that a change in a zoning ordinance did not impair any vested rights of a corporation that had not begun construction on or even purchased land for business). Obviously, that is not the context of the case before us now. There were no changes to Rule 41.01 or the TPPA after either the filing of the complaint or the filing of the TPPA petitions. Moreover, as we previously noted, the right to take a voluntary nonsuit was well established under Rule 41.01(1) when both the complaint and the TPPA petitions were filed in this case.

We have had occasion to examine the concept of vested rights in the specific context of the implied exception to the availability of a voluntary nonsuit under Rule 41.01(1). For example, in Anderson, the State condemned certain real property through a procedure in which it determined the amount due the landowners and deposited it with the court. 521 S.W.2d at 791. The State obtained an order for possession of the property because the landowners did not challenge the State's right to take the property. However, the landowners did challenge the amount of compensation to be paid for the property. Several months later, the State sought to abandon the condemnation action and requested that the landowners repay the deposited funds they had withdrawn. Id. at 788–89. Upon the landowners' challenge to the State's nonsuit, we stated:

> Under these circumstances, we hold that when the [State] obtained a court order for possession of the property being condemned, leaving nothing to be decided except the compensation to be paid [the landowners] for the land taken, the appellee lost its right to take a nonsuit over the objections of the [landowners].

Id. at 791. Of chief importance was that the condemnation was regarded as settled before the nonsuit, and the landowners had been deprived of the complete and free use of the land.

In Rickets v. Sexton, the plaintiffs filed suit but did not appear to prosecute the action, resulting in a dismissal with prejudice. 533 S.W.2d 293, 294 (Tenn. 1976). However, the plaintiffs had sought a voluntary nonsuit on the day before trial, which the trial court "disallowed" upon finding that a nonsuit would prejudice a disabled, sixty-nine-year-old defendant in poor health. Id. at 293–94. The defendants resisted the nonsuit, in part, "upon the grounds that it would deprive them of unspecified 'substantive rights concerning their defenses which would not be available in a second suit.'" Id. at 295. We reversed the trial court, recognizing the vested rights implied exception but concluding that there were no vested rights in the case. Id. at 294–95.

In Weedman v. Searcy, an employee filed suit to recover workers' compensation benefits. 781 S.W.2d 855, 855 (Tenn. 1989). The trial court conducted an evidentiary

hearing but requested post-trial briefs on the legal questions involved. Id. at 856. After the evidentiary hearing, but during the time allowed for filing post-trial briefs, the employee voluntarily nonsuited. The defendants challenged the voluntary dismissal, insisting "that they had a vested right to preserve the record of the evidentiary hearing for appellate review." Id. We determined that the voluntary dismissal occurred "before there had been any decision by the trial judge on the merits and while the case was still pending final argument (in this case written briefs)." Id. We rejected the defendants' claim that they had vested rights. Id.

These cases provide a measure of guidance for analyzing the vested rights implied exception. However, because the TPPA is a recent and distinctive creation, our existing law does not directly control the answer to the question presented here. We note that, like the intermediate appellate court in this case, another panel of the Court of Appeals rejected a vested rights implied exception argument in a case involving a TPPA petition that was pending at the time of a voluntary nonsuit. Solomon v. Solomon, No. M2021-00958-COA-R3-CV, 2023 WL 3730597, at *3 (Tenn. Ct. App. May 31, 2023).[25] In Solomon, the plaintiff sued the defendants over social media posts, asserting claims for "defamation, false light, invasion of privacy, negligence, intentional infliction of emotional distress, civil conspiracy, violations of the Tennessee Personal Rights Protection Act, and false advertising." Id. at *1. The defendants filed a TPPA petition, and the plaintiff responded to it. However, the plaintiff later filed a notice of voluntary dismissal, and the trial court declined to adjudicate the TPPA petition. Id.

Upon appeal, the court in Solomon explained that "a defendant does not obtain a vested right by simply filing a motion to dismiss." Id. at *3 (citing Rickets, 533 S.W.2d at 294). The court likened the TPPA petition to a motion to dismiss and concluded that there was no vested right to a decision on the TPPA petition. The court noted that "[w]hen the voluntary nonsuit was filed, the [trial] court had made no determination of whether [the plaintiff] had 'establishe[d] a prima facie case for each essential element of the claim' or whether [the defendants] had 'establishe[d] a valid defense to the claims.'" Id. (quoting Tenn. Code Ann. § 20-17-105(b)–(c)). The court observed that "[t]he protection of 'vested rights' is rooted in due process," id. (citing Morris, 572 S.W.2d at 905), and it concluded that "[d]ue process does not demand that every TPPA petition be decided on its merits." Id. Accordingly, the Court of Appeals determined that the plaintiff's voluntary nonsuit did not deprive the defendants of a vested right and affirmed the trial court's decision not to adjudicate the TPPA petition. Id. at *1, *5.

---

[25] A different panel of the Court of Appeals also rejected a vested rights implied exception argument, but in that case, the defendants had not filed the TPPA petition before the voluntary nonsuit occurred. Adamson, 2022 WL 17334223, at *21. Thus, the court focused on the fact that the voluntary dismissal "did not 'deprive the defendant of some right that became vested *during the pendency of the case.*'" Id. (emphasis added) (quoting Lacy, 152 S.W.3d at 484 n.8).

We agree with the reasoning in Solomon.  In this case, just as in Solomon, at the time the Plaintiff filed his notice of voluntary dismissal, the TPPA petitions had not been submitted to the trial court for a determination on whether the parties had borne their respective burdens under the TPPA.  Nowhere does the text of the TPPA require that a petition, once filed, must be adjudicated under any and all circumstances.  Nevertheless, the Petitioners argue that the filing of a TPPA petition creates a vested right to have that petition adjudicated that will defeat a plaintiff's longstanding right to take a voluntary nonsuit.  As the Court of Appeals observed in Solomon, vested rights are grounded in due process.  See Morris, 572 S.W.2d at 905.  We have found nothing that would support a conclusion that due process principles mandate the adjudication of a pending TPPA petition notwithstanding the voluntary dismissal of the subject legal action.  We agree with the court in Solomon that due process does not demand that every TPPA petition be decided on its merits.

We note that the Petitioners, in asserting a vested right to have their petitions adjudicated, analogize to a tort cause of action, in which even if the right to a specific recovery is uncertain, the plaintiff's rights nonetheless "vest or accrue with the commission of the tort."  Certainly, a cause of action is a "species of property protected by [due process guarantees]," Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982), and a vested right of action "enjoys the full protection of the due process clauses of the Federal and State Constitutions," Morris, 572 S.W.2d at 905.

However, we do not find the comparison convincing.  The TPPA makes clear that it does not create a private right of action.  Tenn. Code Ann. § 20-17-108(6).  Instead, as the Court of Appeals noted in rejecting the vested rights implied exception in this case, the TPPA "provides a dismissal procedure with a burden-shifting mechanism that differs from Rule 12.02."  Flade, 2023 WL 2200729, at *18.  In this way, a TPPA petition is unlike a cause of action and more akin to a method of mounting a defense.  We do not believe the mere filing of a TPPA petition translates to a vested right to have it adjudicated under any circumstance.  See Haynes v. Cumberland Builders, Inc., 546 S.W.2d 228, 231 (Tenn. Ct. App. 1976) ("The availability of a legal defense is not a 'vested right' within the purview of Anderson.").

Lastly, we note that the Petitioners draw our attention to Menche v. White Eagle Property Group, LLC, No. W2018-01336-COA-R3-CV, 2019 WL 4016127 (Tenn. Ct. App. Aug. 26, 2019), to support their contention that they had a vested right to have their pending TPPA petitions heard despite the Plaintiff's voluntary nonsuit.  In Menche, the trial court heard and granted three motions to compel discovery during the pendency of a lawsuit, reserving ruling on the attorney's fees and expenses to be paid by the plaintiff to the defendants.  Id. at *1–2.  See Tenn. R. Civ. P. 37.01(4) ("If the motion [to compel] is granted, the court shall, after opportunity for a hearing, require the party . . . whose conduct necessitated the motion . . . to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees . . . .").  The defendants filed a fourth motion,

this time requesting dismissal in addition to attorney's fees and expenses. Menche, 2019 WL 4016127 at *2. Before the motion was heard, the plaintiff sought a voluntary nonsuit. Because of a pending motion for partial summary judgment, it was necessary to obtain the defendants' consent to the nonsuit. See Tenn. R. Civ. P. 41.01(1). The trial court ultimately entered an agreed order of dismissal.[26] Menche, 2019 WL 4016127 at *2–3. Thereafter, the defendants sought to have their fourth motion heard. Although the plaintiff argued that the dismissal had concluded the case and deprived the trial court of jurisdiction, the trial court proceeded to hear the matter and awarded attorney's fees and costs. Id. at *3. A divided panel of the Court of Appeals affirmed, noting that "a case cannot be final and appealable under Rule 3 [of the Rules of Appellate Procedure] in the absence of an adjudication of a pending prejudgment motion for [discovery] sanctions." Id. at *6, *10.

We find Menche inapposite. Obviously, Menche did not involve a TPPA petition, but rather an award of attorney's fees and expenses under Rule 37.01(4). Id. at *1 n.3. Furthermore, unlike the case before us, Menche did not involve the right to a unilateral voluntary nonsuit, since there was a pending motion for partial summary judgment. Id. at *2. Given the circumstances in Menche, the issue the court confronted was whether "the agreed order allowing a nonsuit was in fact a final order" at the time the defendants sought disposition of the fourth motion to compel. Id. at *4. Nowhere did the court in Menche address the concept of vested rights. Given the differences, we do not find Menche instructive on the question of whether due process requires that a pending TPPA petition be adjudicated notwithstanding a unilateral voluntary nonsuit under Rule 41.01(1).[27]

For the reasons set forth above, we conclude that the mere filing of a TPPA petition does not implicate the vested rights implied exception to Rule 41.01(1).[28] A voluntary nonsuit may preclude the adjudication of a pending TPPA petition without running afoul of due process guarantees. Stated another way, we do not believe that the availability of a voluntary nonsuit at any time prior to the final submission of a TPPA petition to the trial

---

[26] Whether the language of the agreed order of dismissal reflected that the defendants had preserved or abandoned their pending request for discovery sanctions was a point of contention. See Menche, 2019 WL 4016127, at *9 ("The trial court's order appears to acknowledge that although [the plaintiff] requested dismissal of 'the *action* in its entirety,' the trial court was only inclined to dismiss [the plaintiff's] *lawsuit*." (emphasis in original)). Ultimately, the majority concluded that the defendants had not abandoned their request for sanctions. Id. at *8–9.

[27] Because we find Menche inapposite, we need not address the soundness of the decision. However, we again note that one judge dissented, concluding "that the plaintiff had functionally and effectively ended [the] action by taking a voluntary nonsuit" in which the defendants had acquiesced. Menche, 2019 WL 4016127, at *15 (Frierson, J., dissenting) (internal quotation marks omitted).

[28] We reiterate that at the time of the voluntary nonsuit in this case, the TPPA petitions had not been argued or submitted to the trial court for decision. We do not decide if the result we reach today would be the same were those circumstances different.

court, see Himmelfarb v. Allain, 380 S.W.3d 35, 40 (Tenn. 2012) (citing Tenn. R. Civ. P. 41.01), deprives a TPPA petitioner of due process.

*F. The Counterclaim Exception*

The third exception to the availability of a voluntary dismissal asserted by the Petitioners is the counterclaim exception. Rule 41.01 expressly provides that "[i]f a counterclaim has been pleaded by a defendant prior to the service upon the defendant of plaintiff's motion to dismiss, the defendant may elect to proceed on such counterclaim in the capacity of a plaintiff." Tenn. R. Civ. P. 41.01(1). The Petitioners argue that their TPPA petitions seek affirmative relief—they point to their request for dismissal with prejudice, attorney's fees, and sanctions—and, as a result, they qualify as counterclaims for purposes of Rule 41.01(1). Because the Petitioners filed their TPPA petitions before the Plaintiff gave notice of voluntary dismissal, they assert that they may proceed on their petitions notwithstanding the Plaintiff's nonsuit.

In this case, the Court of Appeals was not persuaded that a TPPA petition constitutes a counterclaim within the meaning of Rule 41.01(1). Flade, 2023 WL 2200729, at *23. Looking to the leading authority from this Court as to what constitutes a counterclaim under Rule 41.01(1), the intermediate appellate court stated that a counterclaim is an affirmative pleading "sufficient to state a claim for relief" rather than a procedural mechanism. Id. at *24 (quoting Blake v. Plus Mark, Inc., 952 S.W.2d 413, 416 (Tenn. 1997)). Evaluating the TPPA, the court characterized a TPPA petition as

> combin[ing] the procedural mechanism of a Tennessee Rules of Civil Procedure Rule 12.02(6) motion to dismiss with, as the California Court of Appeal has characterized it, "a procedure where the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation."

Id. (quoting Jenkins v. Brandt-Hawley, 302 Cal. Rptr. 3d 883, 897 (Cal. Ct. App. 2022)). The court further noted that the TPPA does not create a private right of action and that it does not affect the substantive law governing any asserted claim. Id. (citing Tenn. Code Ann. § 20-17-108(5)–(6)). Ultimately, the court concluded that a TPPA petition may not be maintained as a counterclaim after a voluntary dismissal pursuant to Rule 41.01(1). Id. However, the court acknowledged that a different panel of the Court of Appeals reached a contrary conclusion. Id. at *23 (citing Adamson v. Grove, No. M2020-01651-COA-R3-CV, 2022 WL 17334223, at *14 (Tenn. Ct. App. Nov. 30, 2022)).

In Adamson, the Court of Appeals addressed the question of whether the defendants could pursue a TPPA petition after a voluntary nonsuit. 2022 WL 17334223, at *1. In that case, the plaintiff nonsuited before the defendants ever filed a TPPA petition. The defendants sought to alter or amend the dismissal order to grant them relief under the

TPPA, including a dismissal with prejudice, an award of attorney's fees, and an award of sanctions. The trial court did so, and the plaintiff appealed. Id. On appeal, it was the plaintiff who argued, in part, that the defendants' TPPA petition qualified as a counterclaim. Id. at *12. The reason is obvious: Rule 41.01 requires that a counterclaim be pleaded prior to service of a notice of voluntary dismissal, Tenn. R. Civ. P. 41.01(1), and the defendants' TPPA petition was not.

The intermediate appellate court noted the leading authority identifying what constitutes a counterclaim for purposes of Rule 41.01(1). Id. at *13–14 (citing Blake, 952 S.W.2d at 416). Unlike the Court of Appeals in this case, the court in Adamson determined that the TPPA petition "amounted to more than 'mere denials of the plaintiff's cause of action' and sought 'affirmative relief' under the TPPA including attorney fees and sanctions." Id. at *14 (quoting Blake, 952 S.W.3d at 416). The court also emphasized that the TPPA provides a "substantive remedy." Id. (citing Tenn. Code Ann. § 20-17-109). As a result, the court concluded that the defendants' TPPA petition did qualify as a counterclaim under Rule 41.01(1), albeit one that had not been filed before the plaintiff's voluntary nonsuit. Id.

At a general level, a counterclaim is defined as a "claim for relief asserted against an opposing party after an original claim has been made; esp. a defendant's claim in opposition to or as a setoff against the plaintiff's claim." Counterclaim, Black's Law Dictionary (9th ed. 2009). As the Court of Appeals recognized, we have examined the nature of a counterclaim in the specific context of the voluntary dismissal rule. See Blake, 952 S.W.2d at 416.

In Blake, an employee filed a complaint for workers' compensation benefits against her employer. The employer "filed a pleading consisting of an answer and a 'counter-complaint.'" Id. at 414. In the answer, the employer responded to the allegations of the complaint and asserted certain defenses. In the counter-complaint, the employer adopted the allegations set forth in its answer and "'[sought] a determination . . . of the rights, duties and obligations of the parties' and general relief." Id. (alterations in original). The employee later voluntarily dismissed her complaint without prejudice. But the case then proceeded on the counter-complaint for a determination of the benefits to which the employee was entitled from the employer. The employee ultimately recovered no benefits. Id. at 414–15.

On appeal, the employee argued that the trial court erred by hearing the case on the counter-complaint after the voluntary nonsuit. Id. at 415. We noted that under the voluntary dismissal rule, a defendant may elect to proceed on a counterclaim after a nonsuit so long as the counterclaim was pleaded before the voluntary dismissal. Id. at 415–16 (citing Tenn. R. Civ. P. 41.01(1)). The question we addressed was "whether the employer's pleading set forth a counterclaim within the meaning of the rule." Id. at 416.

In answering the question, we first examined the statute at issue, which specifically provided that in a workers' compensation dispute, either the employee or the employer could submit "the entire matter" for a determination by the trial court. Id. at 415 (citing Tenn. Code Ann. § 50-6-225(a)(1) (Supp. 1993)). The employer's counter-complaint did precisely that. Id. The pleading identified relevant factual and background information and contended that the employee had not sustained a work-related injury in the course of her employment. Therefore, the employer argued that the employee was not entitled to any benefits. Id. at 416.

We also examined historical practice in this context, noting that "the dismissal of an original bill ordinarily carried with it the dismissal of a cross bill or an answer filed as a cross bill, unless the answer or cross bill set up grounds for *affirmative relief*." Id. (emphasis added) (citing Henry R. Gibson, Suits in Chancery § 726 (2d ed. 1907); McDowell v. Hunt Contracting Co., 181 S.W. 680, 681 (Tenn. 1916)). Affirmative relief, in turn, was construed as follows:

> [T]he term "affirmative relief" requires the allegation of new matter that, in effect, amounts to a counterattack. The relief sought, if granted, must operate not as a defense, but affirmatively and positively to defeat the plaintiff's cause of action. Thus, where the pleadings in a counterclaim constitute mere denials of the plaintiff's cause of action and state no facts on which affirmative relief could be granted, the plaintiff's right to voluntary termination of the suit is not affected.

Id. (quoting 24 Am. Jur. 2d Dismissal § 66 (1983)). We pointed out that this construction was consistent with our Rules of Civil Procedure that defined a compulsory counterclaim as "any claim, other than a tort claim, which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the . . . occurrence that is the subject matter of the opposing party's claim." Id. (quoting Tenn. R. Civ. P. 13.01).

Applying these principles, we determined in Blake that the employer's pleading qualified as a counterclaim within the meaning of Rule 41.01(1). The relevant statute authorized the employer, just as much as the employee, to "submit the entire matter for determination" by the trial court. Id. (citing Tenn. Code Ann. § 50-6-225(a)(1) (Supp. 1993)). We concluded that the employer's pleading contained "more than 'mere denials of the plaintiff's cause of action'" and instead was "sufficient to state a claim for relief under the workers' compensation statute as an original complaint filed by the employer." Id.

With that background, we turn to the case before us. As we pointed out in Blake, a counterclaim must be a claim for "affirmative relief." 952 S.W.2d at 416; see also Lawrence A. Pivnick, Tennessee Circuit Court Practice § 13:1, at 839 (2009). However, in determining whether a TPPA petition constitutes a counterclaim for purposes of Rule

- 27 -

41.01(1), we note that a counterclaim has been described further as a "part of the answer served by a defendant asserting one or more causes of action against a plaintiff." Pivnick, supra, § 13:1, at 839. It is "distinguished from a defense because *it seeks affirmative relief based on a cause of action*, while a defense merely seeks to defeat the opponent's cause of action by denial or avoidance." Id. (emphasis added); see generally 80 C.J.S. Set-off and Counterclaim § 2 (West 2024) ("A counterclaim is a cause of action existing in favor of the defendant against the plaintiff and on which the defendant might have secured affirmative relief had the defendant sued the plaintiff in a separate action."). As a result, a counterclaim is itself subject to defenses such as a motion to dismiss for failure to state a claim. See 3 Nancy Fraas MacLean, Tennessee Practice 481, cmt. 13:1 (4th ed. 2006).

Considering the foregoing principles, we conclude that a TPPA petition does not constitute a counterclaim for purposes of Rule 41.01(1). The TPPA itself makes clear that it does not create a private right of action. Tenn. Code Ann. § 20-17-108(6). We acknowledge that the TPPA states that it is a "substantive remedy." Tenn. Code Ann. § 20-17-109. Regardless, the tenor of the TPPA is one of determining whether the petitioning party has a "valid *defense* to the claims in the legal action" through a specialized expedited procedure. Tenn. Code Ann. § 20-17-105(c) (emphasis added). Through that specialized procedure, a petitioner prevails if the responding party fails to establish a prima facie case for each essential element of the claim in the legal action. Tenn. Code Ann. § 20-17-105(b). In other words, prevailing on a TPPA petition is akin to a defense in that success results from the plaintiff's failure to carry their burden under the statute.

We recognize that a successful TPPA petition results in not just dismissal of the legal action with prejudice, but also a mandatory award of attorney's fees and costs, and potentially "additional relief, including sanctions." Tenn. Code Ann. § 20-17-107(a). But these consequences associated with prevailing under the statutory scheme do not convince us that a TPPA petition qualifies as a counterclaim under Rule 41.01(1). Substantively, a TPPA petition operates as a "mere denial[] of the plaintiff's cause of action," Blake, 952 S.W.2d at 416, in that it contests whether there is "a prima facie case for each essential element of the claim in the legal action," Tenn. Code Ann. § 20-17-105(b). The TPPA still can operate as such, even if it provides for an award of costs and attorney's fees, and potentially sanctions, in addition to a dismissal of the subject legal action with prejudice.

In arguing that a TPPA petition qualifies as a counterclaim, the Petitioners draw our attention to a provision of Tennessee law that characterizes a request for attorney's fees as such: "If a plaintiff voluntarily dismisses an action while a counterclaim is pending for contractual attorney fees, and if the plaintiff does not timely recommence the action, the court, upon proper showing, may order that the counter claimant is the prevailing party for the purpose of recovering contractual attorney fees." Tenn. Code Ann. § 20-6-301(a) (2021). We find this reference wholly inapposite. Pursuing a claim for attorney's fees based on a contractual provision is unlike pursuing a TPPA petition as a specialized

- 28 -

expedited defense mechanism against a qualifying legal action. This argument does not persuade us that a TPPA petition is a counterclaim under Rule 41.01(1).

Additionally, the Petitioners point to a recent opinion from the Court of Appeals involving a different statute in support of their argument that a TPPA petition constitutes a counterclaim. See Justice v. Nelson, No. E2023-00407-COA-R3-CV, 2024 WL 3172263 (Tenn. Ct. App. June 26, 2024). In Justice, the court addressed recent legislation concerning "abusive civil actions." Id. at *1; see Tenn. Code Ann. §§ 29-41-101 to -107 (2024). The legislation applies to certain civil actions (e.g., those containing issues that were previously filed, litigated, and disposed of unfavorably to the plaintiff), see Tenn. Code Ann. § 29-41-101(1)(A)–(C), between parties who share a certain relationship (e.g., former spouses), see Tenn. Code Ann. § 29-41-101(5)(A)–(F), in which the civil action was filed "primarily to harass or maliciously injure the defendant," Tenn Code Ann. § 29-41-101(1). The statute authorizes a defendant to pursue a "claim," Tenn. Code Ann. § 29-41-103(a), to establish that an action constitutes an abusive civil action, see Tenn. Code Ann. §§ 29-41-104 to -106. Among the consequences associated with a successful claim are dismissal of the abusive civil action, an award of attorney's fees and costs for defending against it, and the imposition of prefiling restrictions upon the plaintiff for certain future actions. Tenn. Code Ann. § 29-41-106(a), -106(b)(2)–(3).

In Justice, a defendant filed a motion to classify the complaint at issue as an abusive civil action. 2024 WL 3172263, at *1. Before the trial court held a hearing, the plaintiff voluntarily nonsuited. Id. at *2. The trial court nevertheless proceeded to hold a hearing and adjudicated the matter, ultimately finding against the plaintiff. Id. at *3. Upon appeal, the Court of Appeals considered whether the voluntary dismissal deprived the trial court of jurisdiction to consider the defendant's motion. Id. at *5. The intermediate appellate court concluded that the trial court correctly held a hearing, because the defendant's motion under the statute—filed before the voluntary dismissal—constituted a counterclaim for purposes of Rule 41.01(1). Thus, the defendant could elect to proceed notwithstanding the voluntary nonsuit. Id. (citing Tenn. R. Civ. P. 41.01(1)).

The Petitioners argue that the decision in Justice supports a conclusion that a TPPA petition constitutes a counterclaim for purposes of Rule 41.01(1). We are not persuaded. The decision in Justice addresses a distinct statutory scheme, not the TPPA. Furthermore, although we offer no conclusion here on the soundness of the decision in Justice, we note that the statute at issue in that case refers to the process as involving a "claim" by a defendant. Tenn. Code Ann. § 29-41-103(a). Accordingly, we do not find the decision in Justice to be instructive on the question of whether a TPPA petition qualifies as a counterclaim under Rule 41.01(1).[29]

---

[29] Likewise, although the Petitioners argue that the recent decision of the Court of Appeals in Dominion Real Estate, LLC v. Wise Group, Inc., No. M2023-00242-COA-R3-CV, 2024 WL 1885430 (Tenn. Ct. App. Apr. 30, 2024), supports a conclusion that a TPPA petition constitutes a counterclaim, we

For the foregoing reasons, we conclude that the Petitioners' pending TPPA petitions could not be maintained as counterclaims after the Plaintiff's voluntary nonsuit. The petitions did not exist of their own accord, but rather only as a defensive response to the Plaintiff's complaint. Therefore, we agree with the court below that a TPPA petition does not constitute a counterclaim for purposes of Rule 41.01(1). We overrule the contrary conclusion in Adamson, 2022 WL 17334223, at *14.

## G. Authority from Other Jurisdictions

Noting that many states have anti-SLAPP statutes, the Petitioners urge this Court to take heed of decisions from other jurisdictions[30] that allow for, at least to some degree, the adjudication of a pending petition in the face of the voluntary dismissal of the subject complaint. The Petitioners contend that these decisions are persuasive because the TPPA is similar to anti-SLAPP statutes in those jurisdictions. The Petitioners urge this Court not to construe the TPPA "in a way that places it at odds with the statutes on which it was modeled."

The TPPA is "Tennessee's version of an anti-SLAPP statute." Charles v. McQueen, 693 S.W.3d 262, 267 (Tenn. 2024). As this statement implies, Tennessee is not alone in having an anti-SLAPP statute. Many of our sister states have a version, and it is generally recognized that they share broad similarities. See Nandigam Neurology, PLC v. Beavers, 639 S.W.3d 651, 659 (Tenn. Ct. App. 2021) ("Over thirty states now have anti-SLAPP statutes in place, and while the particular language varies, the stated purpose of anti-SLAPP legislation is consistent."). The TPPA "is, on its face, consistent with the anti-SLAPP legislation of many other states." Id. at 660.

However, this case does not revolve solely around the TPPA. The issue presented here implicates the intersection of the TPPA and Tennessee's rule governing voluntary dismissal. As we mentioned above, our rule governing voluntary dismissal is more permissive than many jurisdictions. See Lacy, 152 S.W.3d at 484–85; Weedman, 781 S.W.2d at 856–57. Thus, regardless of the shared broad purpose and general similarities between the TPPA and the anti-SLAPP statutes of other jurisdictions, the persuasiveness of decisions from other jurisdictions is naturally limited.[31] Considering these differences,

___

do not find it instructive. Dominion addresses an award of damages for a frivolous appeal under Tennessee Code Annotated section 27-1-122, id. at *2, and we find it inapposite to the question of whether a TPPA petition qualifies as a counterclaim under Rule 41.01(1).

[30] The Petitioners refer to decisions from Texas, California, Georgia, and the District of Columbia as examples.

[31] Texas is a prime example. The Texas Court of Appeals held that a motion under the anti-SLAPP statute—because it provides for dismissal with prejudice, attorney's fees, and sanctions—survives a

the court below did not find the authority from other jurisdictions to be "particularly persuasive." <u>Flade</u>, 2023 WL 2200729, at *21.

We agree with the court below. We must chart our course based on not just the TPPA, but also its intersection with our rule addressing voluntary dismissal. At the end of the day, we are not bound by the decisions of our sister states and instead base our decision on our interpretation of the law in Tennessee.

## III. CONCLUSION

For the foregoing reasons, we conclude that the right to take a voluntary nonsuit is not "subject to" the provisions of the TPPA under Rule 41.01(1), that there is no vested right to adjudication of a TPPA petition pending at the time of a voluntary nonsuit, and that a TPPA petition does not constitute a counterclaim for purposes of Rule 41.01(1). Thus, we hold that the trial court correctly declined to adjudicate the pending TPPA petitions of Ms. Isaacs and the BCLP once Mr. Flade voluntarily nonsuited his complaint. Accordingly, we affirm the judgment of the Court of Appeals.

The costs of this appeal are taxed to the appellants, Stephanie Isaacs and the Bedford County Listening Project, for which execution may issue if necessary.[32]

_____
JEFFREY S. BIVINS, JUSTICE

---

voluntary nonsuit. <u>McDonald Oilfield Operations, LLC v. 3B Inspection, LLC</u>, 582 S.W.3d 732, 752 (Tex. Ct. App. 2019). However, that conclusion was premised on the nonsuit rule in Texas, which contains express language to support it. <u>See</u> <u>Gaskamp v. WSP USA, Inc.</u>, 596 S.W.3d 457, 468 (Tex. Ct. App. 2020).

[32] Mr. Flade asserts in his brief that Ms. Isaacs and the BCLP "have wholly failed to provide any persuasive authority for any of [their] positions before this Court and, accordingly, this appeal should be denied with costs and attorney's fees being awarded against [them] for their dishonest attempts to mislead this Court." Mr. Flade cites no authority to support his request, and it is hereby denied.

- 31 -